1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN S.,<br><br>                              Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of<br>Social Security,[1]<br><br>                              Defendant. | Case No.:  23-cv-0370-MMA-DEB<br><br>**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[DKT. NO. 13]** |

This Report and Recommendation is submitted to United States District Judge Michael M. Anello pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c).

## I.    INTRODUCTION

Plaintiff Lauren S. seeks review of the Commissioner of Social Security's denial of her application for disability benefits. Dkt. No. 1.[2] Plaintiff filed a motion for summary judgment seeking a remand for benefits or additional proceedings. Dkt. No. 13. The Commissioner filed an opposition, and Plaintiff replied. Dkt. Nos. 15–16. For the reasons set forth below, the Court **RECOMMENDS GRANTING** Plaintiff's Motion for

---

[1] Martin O'Malley is substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

[2] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case. CivLR 7.1(e)(6)(b).

Summary Judgment and **REMANDING** this action for further proceedings consistent with this opinion.

## II.    PROCEDURAL BACKGROUND

Plaintiff applied for Supplemental Security Income alleging disability beginning November 4, 2017. AR 11.[3] The Social Security Administration denied Plaintiff's application initially and on reconsideration. *Id.* Plaintiff requested and received an Administrative Law Judge ("ALJ") hearing, after which the ALJ issued a written decision finding Plaintiff not disabled. AR 8–20. The Appeals Council denied Plaintiff's request for review (AR 1–7), and this case followed. Dkt. No. 1.

## III.   SUMMARY OF THE ALJ'S DECISION

The ALJ's decision followed the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i)–(v). At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since October 2, 2020, the application date." AR 13.

At step two, the ALJ found Plaintiff had the following severe impairments: anxiety, autism spectrum disorder, bipolar disorder, depression, learning disorder, mild cannabis use disorder, neurocognitive disorder, and post-traumatic stress disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. *Id*. The ALJ then evaluated whether Plaintiff satisfied the "paragraph B" criteria. AR 14–15.

To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in the following broad areas of functioning:

---

[3] "AR" refers to the Administrative Record lodged on April 26, 2023. Dkt. No. 10. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

(1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404, subpart P, app. 1. Applicants are scored in each area and are assessed to have none (no limitation), mild, moderate, marked, or extreme limitation. 20 C.F.R. § 404.1520a.

Here, the ALJ found Plaintiff had mild limitations in two of the four functional areas: understand, remember, or apply information; and adapt or manage oneself. AR 14. The ALJ found a moderate limitation in the two other areas: interact with others; and concentrate, persist, or maintain pace. *Id.* Because Plaintiff's mental impairments did "not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria [were] not satisfied." *Id.*

Before proceeding to step four, the ALJ found Plaintiff had the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels with the following limitation: Plaintiff "is limited to simple repetitive tasks in a nonpublic setting." AR 15.

At step four, the ALJ found Plaintiff had no past relevant work. AR 18.

At step five, the ALJ concluded Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 19. The ALJ, therefore, concluded Plaintiff was not under a disability since October 2, 2020. AR 19–20.

## IV.   STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla, but less than a preponderance . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison*, 759 F.3d at 1010. The Court "must consider the entire record as a whole and may not affirm

simply by isolating a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision . . . ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Plaintiff filed her claim after March 27, 2017; therefore, the 2017 amendments governing medical opinions apply. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Under those amendments, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources." 20 C.F.R. § 404.1520c(a). Instead, all medical opinions are evaluated based on supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* § 404.1520c(c). The ALJ is required to explain the most important factors, supportability and consistency, but is not required to discuss the other factors. *Id.* § 404.1520c(b)(2). Supportability means a medical source must support the opinion by explaining the "relevant . . . objective medical evidence." *Woods*, 32 F.4th at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. The ALJ must "articulate . . . how persuasive" the ALJ finds "all of the medical opinions." 20 C.F.R. § 404.1520c(b).

The Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' . . . .") (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

## V.    DISCUSSION

Plaintiff alleges the ALJ erred by: (1) rejecting the opinions of Dr. Eric Raimo, Plaintiff's psychiatrist; and (2) discounting Plaintiff's subjective symptom testimony. Dkt. No. 13 at 5–16. Plaintiff also alleges the Appeal's Council failed to properly consider Dr. Raimo's supplemental opinion. Dkt. No. 13 at 16–18. The Court finds the ALJ's decision erred in its analysis of both Dr. Raimo's opinions and Plaintiff's subjective symptom testimony, and, therefore, recommends remanding for further proceedings.

### A. <u>Dr. Raimo's Opinions</u>

The ALJ found Dr. Raimo's opinions not persuasive because: (1) "[his] treatment notes did not document positive objective findings relating to [Plaintiff's] mental impairments"; and (2) they "are not consistent with fairly normal mental status examinations by Dr. Kim and Dr. Netter, the low average scores in WAIS IV testing, and the normal activities of daily living described by [Plaintiff]." AR 18 (citations omitted).

Plaintiff claims the ALJ's consistency and supportability analyses of Dr. Raimo's opinions are erroneous. Dkt. No. 13 at 6. The Court agrees.

As discussed above, supportability and consistency are the most important factors in evaluating medical opinions. 20 C.F.R. § 404.1520c(b)(2). The ALJ, therefore, is required to specifically discuss them. *Id.* Although "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," *Ahearn v. Saul*, 988 F.3d 1111, 1115–16 (9th Cir. 2021) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)), the Court must ensure the ALJ applied the correct legal standards, accurately interpreted the record, and reached a decision supported by substantial evidence. *Bayliss*, 427 F.3d at 1214 n.1 ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (reversing the ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record").

### 1.   <u>Supportability</u>

The Court finds the ALJ committed legal error in rejecting Dr. Raimo's opinions because they "did not include objective findings" and, relatedly, because Dr. Raimo's "treatment notes did not document positive objective findings." AR 16, 18.

In cases involving claimed disabilities resulting from mental illness, "a clinical interview and a mental status evaluation . . . are objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *see also Savannah v. Astrue*, 252 F. App'x 783, 785 (9th Cir. 2007) ("Diagnosis [of mental impairment] by a medical expert constitutes objective medical evidence of an impairment."). This is because "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck*, 869 F.3d at 1049.

Here, Dr. Raimo's records document numerous clinical interviews and evaluations of Plaintiff. AR 51–59, 360–63, 381–92, 554–910, 911–16. Under *Buck*, these "are objective measures and cannot be discounted as a 'self-report.'" 869 F.3d at 1049.

The ALJ's decision cites two exhibits to support his finding that Dr. Raimo lacked objective findings, but those exhibits contain many objective findings. AR 16 (citing Exs. 2F (AR 356–96) and 9F (AR 546–910)). The first exhibit (AR 356–96) includes: (1) Dr. Raimo's January 6, 2021 mental functional capacity assessment, rating nearly all of Plaintiff's mental functional capacities as extreme (AR 360–63); (2) Dr. Weckerly's 2015 neuropsychological examination report, which includes test scores (AR 364–80); (3) Dr. Raimo's biweekly treatment notes from 2017 through 2019 (381–92); and (4) Dr. Raimo's four-page prescribed psychotropic medication summary (AR 393–96). The second exhibit contains 365 pages of Dr. Raimo's treatment notes, which include assessments, diagnoses, lists of medications, treatment plans, histories, complaints, and patient instructions. AR 546–910.

In sum, and contrary to the ALJ's decision, Dr. Raimo's records contain substantial "objective findings." The ALJ, therefore, erred by discounting Dr. Raimo's opinions as unsupported by objective findings.

### 2. **Consistency**

The Court also finds the ALJ's decision erred in its consistency analysis of Dr. Raimo's opinions.

"[U]nder the new regulations, an ALJ cannot reject an examining or treating doctor's opinion . . . without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. The ALJ must consider and accurately characterize all relevant evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("In concluding that the most recent medical evidence indicates [claimant] was improving, the ALJ selectively relied on some entries in [claimant's] records . . . and ignored the many others that indicated continued, severe impairment."); *Michael S. v. Kijakazi*, No. 4:20-cv-05196-MKD, 2022 WL 17260810, at *5 (E.D. Wash. Sept. 29, 2022) ("In focusing on a few generally unremarkable exams to discount [a doctor's] opinion when the longitudinal record shows more mixed findings, the ALJ fails to accurately characterize the record during the period at issue.").

The ALJ found Dr. Raimo's disability opinions "not consistent with fairly normal mental status examinations by Dr. Kim and Dr. Netter, the low average scores in WAIS IV testing, and the normal activities of daily living described by the claimant." AR 18 (citations omitted).

The ALJ's decision attributes a "fairly normal mental status examination" to Dr. Netter (AR 18), and notes Plaintiff "made appropriate eye contact, was polite, and spoke with normal speech" (AR 16). This summary, however, does not fairly portray Dr. Netter's report. Instead, the decision cites portions of Dr. Netter's report that tend to undermine Dr. Raimo's opinions, while overlooking portions that tend to corroborate Dr. Raimo. For example, Dr. Netter found "deficits in adaptive functioning" based on scores below the first percentile in Adaptive Behavioral Composite testing. AR 406.

Dr. Netter also noted that previous testing found Plaintiff had an IQ score in the borderline range. AR 409. And, contrary to the ALJ's characterization of Dr. Netter's report as a "fairly normal mental status examination" (AR 18), Dr. Netter concluded her report by stating Plaintiff presents a "complex clinical picture" (AR 410).

The ALJ's decision is similarly selective in its summary of Dr. DeLorme's report. The ALJ's decision cites Dr. DeLorme's findings that Plaintiff had "age-appropriate speech and communication, normal behavior, and appropriate motivation and concentration during all tasks," and an "IQ score of 94, which was in the average range of intellectual functioning." AR 16. But the decision does not take into account Dr. DeLorme's opinion that Plaintiff was likely to under-report her difficulties (AR 536), or test results from which Dr. DeLorme concluded Plaintiff has: (1) "difficulty with inattentiveness and sustained attention" (AR 541); (2) a "high likelihood of having a disorder characterized by attention deficits" (*id.*); (3) autism spectrum disorder "requiring very substantial support" (AR 542); and (4) "significant difficulty relating to others" (*id.*). Dr. DeLorme's test results also reveal that Plaintiff's coping skills fell "well below expectations" in many subdomains and "below expectations" in several others (AR 543). Based on these results, Dr. DeLorme concluded Plaintiff would struggle with: (1) "controlling her emotions, showing consideration to others, adapting to situations, and managing social consequences of her behaviors"; (2) "friendships, showing care for others, appropriate interpersonal behavior, and conversational skills"; (3) "following instructions and paying attention when someone is speaking"; (4) "dressing and undressing tasks, toileting, washing and bathing, hygiene tasks, and caring for her health"; (5) "responding to social cues, playing, and socializing with peers"; (6) "finances (both making and using money), understanding her legal rights, traveling outside of the home, and maintaining personal safety"; and (7) "grammar and expressive language." *Id.*

In sum, in discounting Dr. Raimo's opinions and finding Plaintiff not disabled, the ALJ's decision selectively cited portions of medical reports tending to support a non-disability finding, while overlooking portions of those same reports that might support

disability. This warrants a remand. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding it is error for an ALJ to "cherry-pick[]" medical evidence disfavoring a claimant instead of considering such evidence in the context of the record as a whole); *Regennitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (remanding where the ALJ inaccurately characterized the evidence as "significant walking activity with [the claimant's] daughter" after "[claimant] said he could walk very slowly with his four-year-old daughter for one and one-half blocks if he rested in the middle"); *Peng See v. Comm'r of Soc. Sec.*, 500 F. App'x 676, 677 (9th Cir. 2012) (reversing where "the ALJ impermissibly focused on portions of [a doctor's] report that supported a finding of disability while ignoring those that would support a finding that [the plaintiff] was disabled.").

## B. <u>Plaintiff's Subjective Symptom Testimony</u>

Plaintiff alleges the ALJ's decision failed to articulate specific, clear, and convincing reasons for discounting the following statements in her function and disability self-reports:

- She stopped working due to her "[t]rouble socially with boss, overwhelmed/stressed." (AR 210).

- She is "too emotional" and "get[s] overwhelmed." (AR 248).

- She needs reminders to "[t]ake a shower, clean, check on pets, grooming my hair." (AR 250).

- She prepares meals only 1-2 times per week and only makes microwave meals because it is "too overwhelming." (AR 250).

- She is not able to pay bills, handle a savings account, or use a checkbook/money order. (AR 251).

- She has difficulty completing tasks, concentrating, understanding, and sometimes getting along with others. (AR 253).

- She handles changes in routine "not very well" and her ability to handle stress is "fair." (AR 254).

- She was unable to complete the Function Report, and her mother "wrote down answers, as forms overwhelm her." (AR 248).

Dkt. No. 13 at 12.

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Garrison*, 759 F.3d at 1014). Second, "[i]f the claimant satisfies the first step . . .  and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (quoting *Garrison*, 759 F.3d at 1014–15).

At step one, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 16; *accord Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (finding ALJ "satisfied the first prong of the ALJ's inquiry regarding the credibility of [plaintiff's] complaints" where the "ALJ acknowledged that [plaintiff's] injuries 'could reasonably be expected to produce some of the pain and other symptoms alleged'").

The ALJ found, however, that Plaintiff's statements (and those of her mother) "regarding the alleged intensity, persistence and limiting effects of these symptoms conflict with the objective medical evidence." AR 16. But the ALJ's conclusion that Plaintiff's statements are inconsistent with the "objective medical evidence" largely relies upon Dr. Netter's and Dr. DeLorme's reports. *Id.* As discussed above, the ALJ's decision does not fairly characterize these reports. Thus, for the same reasons the Court found error in the ALJ's discounting of Dr. Raimo's opinions, the Court also finds error in the ALJ's analysis of Plaintiff's subjective symptom testimony. *Glasgow v. Berryhill*, No. 2:18-cv-0265-DWC, 2018 WL 4140924, at *6 (W.D. Wash. Aug. 30, 2018) (finding error where the ALJ's "assessment of Plaintiff's subjective symptom testimony repeats some of the errors the ALJ made in assessing the opinion evidence").

The ALJ's decision also cites the following activities of daily living ("ADLs") as inconsistent with Dr. Raimo's, Plaintiff's, and Plaintiff's mother's claims of disability: "[s]he stated that she spent the day hanging out with friends, shopping, going to the movies, playing video games, being homeschooled and doing independent study, reading, and doing household chores. She also mentioned having her 18th birthday party at her house." AR 16.

The ALJ's reliance on these ADLs is insufficient to constitute an independent ground to discount Plaintiff's subjective symptom testimony for two reasons. First, the ALJ's decision does not identify which of these ADLs are inconsistent with which parts of Plaintiff's subjective symptom testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."); *Ammie B. v. Saul*, 6:19-cv-145-SI, 2020 WL 1984894, at *8 (D. Or. Apr. 27, 2020) (finding error where the ALJ "summarized portions of the medical record," but "did not link that medical evidence to any specific testimony").

Second, the ALJ's decision does not explain how the cited ADLs (i.e., watching movies, playing games, having a birthday party, having friends, home schooling, and performing certain household chores) are inconsistent with a disability finding. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (finding error where "the ALJ provided no explanation as to why [claimant's] ability to attend church weekly in the past, shop for groceries, and watch television, establish that [claimant] possesses the ability to maintain regular attendance at

23-cv-0370-MMA-DEB

work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) (recognizing that "many home activities may not be easily transferrable to a work environment . . . .").

In sum, the Court finds the ALJ's decision erred in its consideration of Plaintiff's subjective symptom testimony. The Court, therefore, recommends remanding Plaintiff's disability claim for further proceedings on this additional ground.

## C. **Dr. Raimo's Supplemental Opinion**

Following the ALJ's decision, Plaintiff submitted a supplemental opinion from Dr. Raimo to the Appeal's Council. AR 25–29. The Appeals Council found Dr. Raimo's supplemental opinion "does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." AR 2.

The parties dispute whether the supplemental opinion is new and material (as Plaintiff contends), or "merely a repeat opinion" (as the Commissioner contends). *See* Dkt. No. 13 at 17; Dkt. No. 15 at 18. Given the errors found above, however, this dispute is immaterial. Plaintiff will have the opportunity to submit Dr. Raimo's supplemental opinion for consideration on remand. The issue, therefore, is moot. *See Rowan W. v. Kijakazi*, No. 1:22-cv-3010-JAG, 2023 WL 2764636, at *4 (E.D. Wash. Mar. 31, 2023) ("Because the Court remands the matter on the grounds addressed above, and the ALJ will necessarily consider evidence submitted to the Appeals Council, the Court need not decide whether the Appeals Council erred by declining to remand the matter based on evidence submitted to it."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## VI.    **REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff argues an immediate award of benefits is necessary under the credit-as-true rule. Dkt. No. 13 at 18–19. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (citation omitted). Because a properly formulated RFC might still support a conclusion that

Plaintiff was not disabled, a remand for further proceedings is appropriate here. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) (remanding for further administrative proceedings where several "outstanding issues" remained to be resolved, it was "not clear from the record that an [ALJ] would be required to find the claimant disabled and award disability benefits").

## VII.   CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment, **REMAND** for further proceedings, and enter **JUDGMENT** in Plaintiff's favor. Dkt. No. 13.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **February 23, 2024**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 1, 2024**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  February 9, 2024

Honorable Daniel E. Butcher
United States Magistrate Judge

23-cv-0370-MMA-DEB